**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HALIFAX PAVING, INC.,**

        **Plaintiff,**

**-vs-**                                                    **Case No. 6:06-cv-272-Orl-JGG**

**UNITED STATES FIRE INSURANCE**
**COMPANY,**

        **Defendant.**

**ORDER**

This cause came on for hearing on April 3, 2007, on the following motions:

> **MOTION:**    **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. No. 19)**
>
> **FILED:**      **October 19, 2006**
>
> **THEREON** it is **ORDERED** that the motion is **DENIED**.

> **MOTION:**    **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON DEFENDANT'S FOURTH, FIFTH, SIXTH, AND SEVENTH AFFIRMATIVE DEFENSES (Doc. No. 20)**
>
> **FILED:**      **October 19, 2006**
>
> **THEREON** it is **ORDERED** that the motion is **DENIED as moot**.

| | |
|---|---|
| **MOTION:** | **U.S. FIRE'S MOTION FOR PARTIAL SUMMARY JUDGMENT**(Doc. No. 37) |
| **FILED:** | **November 29, 2006** |

**THEREON** it is **ORDERED** that the motion is **GRANTED**.

Defendant United States Fire Insurance Company ("U.S. Fire") is the surety that issued a Labor and Material Payment Bond pursuant to Fla. Stat. § 255.05 on a construction project known as Palm Grove that was performed on behalf of the City of South Daytona. Non-party Volusia Construction Company ("VCC") was the project's general contractor, and the principal on the Payment Bond. Plaintiff Halifax Paving, Inc. ("Halifax") provided labor, services and materials to VCC on the Palm Grove Project. Halifax brings the present action against U.S. Fire on the Payment Bond to recover money allegedly owed to it by VCC on the Palm Grove Project.

Halifax has filed two motions for "partial" summary judgment. The first motion relates to Halifax's claim. The second motion challenges certain of U.S. Fire's affirmative defenses. U.S. Fire also seeks partial summary judgment that it has no liability as to three specific invoices. At the hearing, the parties agreed that U.S. Fire has withdrawn the affirmative defenses at issue in Halifax's second motion for partial summary judgment. Halifax's motion for partial summary judgment filed at Docket 20, therefore, is **DENIED as moot**.

**I.    THE LAW**

   **A.    Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox*, 64 F.3d 590, 593 - 94 (11th Cir. 1995); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). A moving party discharges its burden on a motion for summary judgment by showing the Court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits, and to move for summary judgment on the case as a whole or on any claim. *Id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant, and resolve all reasonable doubts in that party's favor. *Samples on behalf of Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one.

*Jeffery*, 64 F.3d at 594, *quoting WSB-TV v. Lee*, 842 F.2d 1266, 1270 (11th Cir. 1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. On a summary judgment motion, the Court may not weigh the credibility of the parties. *See Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987). If the determination of the case rests on which competing version of the facts or events is true, the case should be presented to the trier of fact. *Id.*

### B.   Material Submitted in Opposition to Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that the party making a motion for summary judgment may submit affidavits to support its argument as to the absence of a genuine issue of material fact. Rule 56(e) provides as follows regarding the materials that the non-movant must submit in response:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse

>party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The non-movant must adduce significant probative evidence that would be sufficient for a jury to find for the non-movant. *LaChance v. Duffy's Draft House*, 146 F.3d 832, 834 (11th Cir. 1998), *citing Liberty Lobby, Inc.*, 477 U.S. at 249.

A reviewing court generally cannot consider inadmissible hearsay evidence in opposition to a summary judgment motion. *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999). In considering a motion for summary judgment, a reviewing court must consider all the proffered evidence, and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980). However, when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony. *Van T. Junkins and Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

## II.     THE FACTS

It is undisputed that U.S. Fire issued a labor and material payment bond for VCC; that the bond applied to the Palm Grove Project; that Halifax was a subcontractor to VCC on the Palm Grove Project; and that Halifax has satisfied the statutory requirements and conditions precedent to bring its claim. Docket 35 at 2, 16, 17. It also is undisputed that Halifax's "labor, services, and provision of

materials are in no way defective; there are no costs to remedy defects in Halifax Paving's work."[1] Docket 53 at 19.

In its motion for partial summary judgment, Halifax claimed that VCC still owed it $440,493.65. Docket 19 at 2. At the hearing on the motion, Halifax stated that it received full payment on March 30, 2007, for the retainage (approximately $110,797.09), and that the retainage no longer was an issue in the case. The only remaining issue raised by the cross motions for summary judgment [Docket 19 and 37] is whether Halifax is entitled to payment from U.S. Fire for three invoices that total approximately $329,695.02.[2]

U.S. Fire contends that VCC has paid Halifax for these amounts so that U. S. Fire is not liable on the bond. In support, U.S. Fire relies on a letter agreement between Halifax and VCC dated November 10, 2005, that sets forth the distribution of funds Halifax received from The Ginn Company for payment on a separate joint venture by Halifax and VCC known as the Conservatory Project.[3] Docket 35-2 at 1; Docket 42-2 at 4, ¶ 11-12. U.S. Fire also relies on photocopies of a check, a billing reconciliation statement, and a billing summary to prove that Halifax received the funds as agreed in the November 10, 2005 letter. Docket 35-3, 35-4, 35-5.

According to the evidence submitted by U. S. Fire, The Ginn Company issued check number 1203 dated November 1, 2005, payable to Halifax Paving, Inc. in the amount of $682,965.49. Docket 35-3. Unidentified handwriting dated November 3, 2005 and November 7, 2005, on a copy of the

---

[1] Although U.S. Fire's response to Halifax's motion disputed that Halifax had properly performed the work, the parties' pretrial stipulation resolved this dispute.

[2] There is an insubstantial difference in the parties' calculation of the amount at issue.

[3] It is undisputed that U.S. Fire did not bond the Conservatory Project. Docket 53 at 19.

-6-

Ginn Company check stub for check number 1203 shows the $682,965.49 allocated as follows: $128,335.05 to Invoice # 5886CM; $156,673.23 to Invoice # 5788CM; $153,568.80 to Invoice # 5875CM; $19,453.00 to Invoice # 17334; and $224,935.42 to Miscellaneous Receivable. Docket 35-3.

In the November 10, 2005 letter, Halifax and VCC record their agreement that the $682,965.49 received from the Ginn Company on the Conservatory Project would be applied in part to the Palm Grove Project for which VCC still owed Halifax. Docket 35-2. In the letter, Halifax and VCC agree to allocate and distribute the $682,965.49 as follows: $128,335.05 to Halifax's September draw [Invoice # 5886CM]; $156,673.22 to Palm Grove July [Invoice # 5788CM]; $153,568.80 to Palm Grove September [Invoice # 5875CM]; $19,453.00 to Palm Grove September [Invoice # 17334]; and $224,935.42 to VCC [Check # 38582]. Docket 35-2; 35-4. Halifax's November 17, 2005 Billing Reconciliation for the Palm Grove Project shows a "Paid date" of November 3, 2005, for each of the three Palm Grove invoices by virtue of the Ginn Company check # 1203. Docket 35-4. Specifically, the Billing Reconciliation for the Palm Grove Project shows that $156,673.22 was the "Amount Paid" on the Palm Grove July Invoice # 5788CM; that $153,568.80 was the "Amount Paid" on the Palm Grove September Invoice # 5875CM; and that $19,453.00 was the "Amount Paid" on the Palm Grove September 28, 2005, Invoice # 17334. Docket 35-4. The three paid Palm Grove invoices total $329,695.02.

Indeed, counsel for Halifax conceded that Halifax actually applied $329,695.02 to the Palm Grove project pursuant to the November 10, 2005 letter agreement by marking the three open Palm Grove invoices as "paid," and by applying the credit in Halifax's accounting book. Statements made

by an attorney during oral argument are binding judicial admissions and may form the basis for deciding summary judgment. *See,* Fed. R. Civ. P. 56(c) ("The judgment shall be rendered forthwith if the pleadings depositions, answers to interrogatories, and *admissions on file*, together with the affidavits, if any, show that there is no genuine issues as to any material fact. . . .") (emphasis added); *Geller v. Prudential Ins. Co. of Am.*, 237 F. Supp. 2d 210, 220 (E.D.N.Y.) (awarding partial summary judgment based on counsel's concessions at oral argument); *cf., Crowe v. Coleman,* 113 F.3d 1536, 1542 (11th Cir. 1997) (unequivocal concessions and admissions of counsel at oral argument in appellate courts can count against the party represented by counsel); *Kohler v. Inter-Tel, Inc.*, 244 F.3d 1167, 1170 n. 3 (9th Cir. 2001) (*citing United States v. Wilmer*, 799 F.2d 495, 502 (9th Cir. 1986) (attorney's statement during oral argument constitutes judicial admission)); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 680 (7th Cir.2001) ("The verbal admission by [defendant's] counsel at oral argument is a binding judicial admission, the same as any other formal concession made during the course of proceedings.").

In his affidavit, however, Halifax President Jim Davis states that, after signing the November 10, 2005 letter agreement with VCC, he learned that VCC had lied to him about paying VCC's vendors on the Conservatory Project. Docket 42-2 at ¶¶ 17, 19, 20. Halifax claims that it would never have signed the November 10, 2005 letter agreement if it had known that VCC had not paid the vendors. Docket 42-2 at ¶ 19. Through an accounting change on its own internal accounts for the Palm Grove Project, Halifax then unilaterally reversed the credit that had been made in accordance with the November 10, 2005 letter agreement. Docket 42-2 at ¶ 20. Halifax used those funds to pay

the vendors on the Conservatory Project. Docket 42-2 at ¶ 20. Halifax does not claim that it ever rescinded the November 10, 2005 letter agreement.

## III.   ANALYSIS

Halifax's complaint asserts a single claim against U.S. Fire — that the terms of the payment bond require U.S. Fire to pay Halifax for labor, services and materials that Halifax supplied on the Palm Grove Project. Docket 2. According to the terms of the bond, U.S. Fire is obligated to pay on the bond only if VCC failed to "pay or cause to be paid in full all sums of money which may be due" to Halifax on the bonded Palm Grove Project. Docket 2 at 10. The issue is whether VCC paid Halifax, or caused Halifax to be paid, on the Palm Grove Project pursuant to the November 10, 2005, letter agreement.

Halifax argues that because the Ginn Company made the check payable only to Halifax, Halifax had sole rights to those funds, and VCC never "paid" Halifax the disputed amounts. The evidence does not support Halifax's argument. The November 10, 2005 letter agreement states in relevant part:

> This letter is to clarify and make record and agreement between Halifax Paving, Inc. and Volusia Construction Co., the sums of money that were received from the Ginn Company, on The Conservatory project and applied to projects that Volusia Construction owed this company; as detailed below. . . . By your signature you agree and authorize this distribution from funds due to Volusia and owed to Halifax Paving, Inc.

Docket 35-2 at 1. This Court need not decide whether there was a time when Halifax held the funds from the Ginn check as joint venture funds in which VCC and Halifax each had an interest. By November 10, 2005, Halifax had expressly agreed with its joint venture partner, VCC, as to how to

divide, apply, and distribute those monies. Docket 35-2. The November 10, 2005 letter agreement is a valid contract by which VCC caused payment to be made to Halifax for three specific open invoices from the Palm Grove Project. On or before the November 17, 2005 Billing Reconciliation on the Palm Grove Project, Halifax booked the three Palm Grove invoices as "paid" as of November 3, 2005. Docket 35-4; 35-3.

Halifax makes several arguments in an effort to avoid the effect of its November 10, 2005 letter agreement. Its primary argument is that VCC fraudulently induced it to enter the November 10, 2005 letter agreement. Even if the Court assumes the truth of the asserted facts — that VCC lied about paying its vendors and that Halifax would not have otherwise entered into the contract — fraudulent inducement does not render the contract void, but merely voidable. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 223 F.3d 1275, 1282 (11th Cir. 2000). Under Florida law, a party who claims fraudulent inducement has two options: rescission of the contract or a suit for damages. *Id.* at 1282-83. Halifax did not rescind the November 10, 2005 agreement. Moreover, U.S. Fire was in no way involved with VCC's alleged fraud. It was Halifax, not U.S. Fire, who chose VCC as its joint venture partner, and who chose to rely on VCC's representation that it had paid the joint venture's subcontractors. The November 10, 2005 agreement remains a valid contract.

Halifax next argues that U.S. Fire is nevertheless obligated to pay on the bond because Halifax never waived its right to claim against the payment bond. Docket 42 at 9. There are two flaws to Halifax's argument. First, Halifax cites no law that supports its argument. Halifax relies on Fla. Stat. § 255.05(2)(b) and (2)(c) for the proposition that U.S. Fire must obtain a waiver of Halifax's right to claim against a payment bond to defeat Halifax's claim. The statute, however, does nothing more than

provide a form for the waiver of rights "when a person is required to execute a waiver of his or her right to make a claim." Fla. Stat. § 255.05(2)(b) and (2)(c). The statute does not state when a waiver is required, and Halifax has pointed to no authority that would require a waiver in the circumstances of this case. Moreover, U.S. Fire is obligated to pay on the bond only if VCC failed to pay. The Court finds that VCC caused Halifax to be paid. Requiring U.S. Fire also to pay would result in a double payment. The Court, therefore, rejects this argument.

Halifax's last argument is that VCC never paid Halifax because the $329,695.02 that Halifax applied to the Palm Grove invoices was not traceable to monies that VCC had received from the City of South Daytona. Halifax cites no no legal requirement that VCC be able to trace the funds to the City of South Daytona to satisfy its payment obligation. Money is fungible, and it does not matter what funds VCC used to pay Halifax. *See, Rosen v. Cascade Int'l, Inc.*, 21 F.3d 1520, 1529 (11th Cir. 1994).

## IV.   CONCLUSION

VCC caused Halifax to be paid in full on the Palm Grove Project, and no material issue of fact remains for trial. Halifax's motion for partial summary judgment [Docket 19] is **DENIED**, and U.S. Fire's motion for [partial] summary judgment [37] is **GRANTED**. Retainage monies are no longer an issue in the case, so all issues have been resolved in U.S. Fire's favor. Pursuant to Fed. R. Civ. P. 58, the Clerk shall enter a judgment in favor of U.S. Fire Insurance Company and against Halifax

Paving, Inc. All other pending motions are denied as moot.

**DONE** and **ORDERED** in Orlando, Florida, on April 6, 2007.

/s/ James G. Glazebrook
JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE